```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
MANDELA BROCK,                                                   :
                                                                 :
                                                                 :
                             Plaintiff,                          :
                                                                 :         20-cv-7513 (LJL)
            -v-                                                  :
                                                                 :         OPINION AND ORDER
MARK ZUCKERBERG, et al.,                                         :
                                                                 :
                             Defendants.                         :
                                                                 :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/25/2021

LEWIS J. LIMAN, United States District Judge:

Pro se Plaintiff Mandela Brock ("Plaintiff" or "Brock") filed this action on September 14, 2020 against Facebook, Inc. ("Facebook"), Mark Zuckerberg ("Zuckerberg"), Sheryl Sandberg ("Sandberg"), and John and Jane Does 1-100 (collectively, "Defendants"). By amended complaint, Plaintiff added Sean Parker ("Parker") and Mark Pincus ("Pincus") as Defendants. Plaintiff claims Defendants violated his constitutional rights to free speech and due process by allegedly removing and blocking his Facebook posts. Plaintiff also alleges a series of civil Racketeer Influenced and Corrupt Organizations ("RICO") violations.

Defendants move to dismiss under Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) on the grounds that Plaintiff's complaint fails to state a claim for relief. Alternatively, Defendants move to transfer the case to the United States District Court for the Northern District of California under 28 U.S.C. § 1404(a).

For the following reasons, the Court grants the motion to dismiss with prejudice. It also denies the motion to transfer as moot.

## BACKGROUND

Plaintiff Mandela Brock brought this action against Facebook, Zuckerberg, Sandberg and later Parker for "unconstitutionally censor[ing]" his content on the Facebook platform.[1] Dkt. No. 2 ("Compl.") ¶ 4.

Facebook is a California-based technology company that operates a variety of online services and applications, including its flagship "Facebook" social media platform. Dkt. No. 29 at 12. Mark Zuckerberg serves as Chief Executive Officer of Facebook and Sheryl Sandberg serves as Chief Operating Officer.[2] *Id.* On the Facebook platform, individuals can upload content, share posts, create groups, and comment on other posts. *See* Compl., Ex. A-1, A-2. According to Defendants, all persons who use Facebook must agree to Facebook's User Agreement. Dkt. No. 28 at 1 (the "Agreement"). The Agreement includes Facebook's "Terms of Use," "Statement of Rights and Responsibilities," and "Terms of Service." *Id.* Facebook's Terms of Service, Dkt. No. 18-1, prohibit users from "shar[ing] anything: [t]hat violates . . . our Community Standards . . . [t]hat is unlawful, misleading, discriminatory or fraudulent." Dkt. No. 18-1 at 4. Plaintiff is registered to use Facebook under the username "Mandela El'Shabazz." Compl., Ex. A.[3]

Plaintiff claims Facebook "censored" his content on its platform at least thirty times between March 2020 and September 2020. Dkt. No. 21 ("Amended Complaint" or "AC") ¶ 4. He alleges that Facebook first "censored" his posts on or around March 15, 2020 and that Facebook's removal of his posts "intensified" following the George Floyd protests in May 2020.

---

[1] Zuckerberg, Sandberg, and Parker are referred to as the "Individual Defendants."
[2] While Parker was named as a Defendant in the Amended Complaint, no summons has been issued against him.
[3] The Plaintiff did not include all relevant claims or Exhibits A, C, D, F, K or M in the Amended Complaint. However, in accordance with the Court's obligation to construe pro se pleadings liberally, the Court considers both the original complaint and the amended complaint together.

*Id.* ¶ 5.  Plaintiff's posts were flagged and removed by Facebook for violating the company's "Community Standards" on spam, Compl., Exs. A, C, and F, and its "Community Standards" on hate speech, Compl., Exs. A, C, D, K, and M.  Plaintiff's posts were also flagged for being "abusive," Compl., Ex. L, and for being "partly false," Compl., Exs. R and Q.

In response to Facebook's removal and flagging of his content, Plaintiff alleges violations of his constitutional rights under the First, Fifth, Sixth, and Fourteenth Amendments.  Compl. ¶¶ 16-20, 21-26; AC ¶¶ 23-27, 28-33.  Plaintiff claims Facebook, Zuckerberg, and Sandberg violated Plaintiff's "right to free speech" by allowing the "Facebook Oversight Board,"[4] which he presumes is responsible for ensuring user compliance with Facebook's Community Standards, to "censor" his content.  Compl. ¶¶ 17-18; AC ¶¶ 24-25.  Plaintiff then alleges Defendants violated his "due process" rights by failing to provide him with an opportunity to "put forward a stated . . . defense" for his posts.  Compl. ¶ 17; AC ¶ 24.  Plaintiff also claims that Zuckerberg, Sandberg, and Parker "permitted, tolerated, and w[ere] deliberately indifferent to a clear pattern of suppression of free speech, discrimination, and partisanship abuse."  Compl. ¶ 22; AC ¶ 29.

Plaintiff also alleges Facebook and the Individual Defendants violated RICO.  18 U.S.C. § 1962; AC ¶¶ 34-71.  Plaintiff's RICO claims primarily relate to Defendants' motion to transfer the case to the United States District Court for the Northern District of California, pursuant to the forum selection clause in Facebook's Terms of Service.  AC ¶¶ 20-22.  Plaintiff alleges Defendants—in seeking to enforce the forum selection clause—are operating a "jurisdictional shell game."  *Id.* ¶ 11.

---

[4] Plaintiff defines the Facebook Oversight Board in the Amended Complaint John Doe 1-100 and Jane Doe 1-100.

## PROCEDURAL HISTORY

On September 14, 2020, Plaintiff filed an initial complaint against Facebook, Zuckerberg, Sandberg, and John Doe 1-100 and Jane Doe 1-100.[5] Compl. at 3. Defendants moved to dismiss the initial complaint, or alternatively to transfer venue to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a) on November 20, 2020. Dkt. No. 17.

Plaintiff filed the Amended Complaint on December 16, 2020. Pursuant to the Court's individual practices, Defendants' motion to dismiss was denied as moot. Dkt. No. 26. In the Amended Complaint, Plaintiff added Defendants Parker (in his personal and corporate capacities) and Pincus. Pincus is the litigation attorney who appeared for Facebook, Zuckerberg, and Sandberg in this case. *Id*. On December 30, 2020, the Court dismissed the claims against Pincus as frivolous. Dkt. No. 26. Plaintiff appealed the Court's decision to dismiss the claims against Pincus. Dkt. No. 30. The Second Circuit dismissed Plaintiff's appeal pursuant to 28 U.S.C. § 1291 on June 3, 2021. Dkt. No. 36. Pincus, on behalf of Zuckerberg, Sandberg, and Facebook, filed a new motion to dismiss for failure to state a claim, or alternatively, to transfer venue on January 11, 2021. Dkt. No. 29. Plaintiff responded to the motion to dismiss on February 28, 2021. Dkt. No. 30. On March 8, 2021, Defendants filed a reply memorandum of law in further support of their motion to dismiss. Dkt. No. 34.

## LEGAL STANDARD

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept the material facts as alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) (quoting *Hernandez v.*

---

[5] Plaintiff does not make any substantive allegations against John Doe 1-100 or Jane Doe 1-100.

*Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994)).  However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court is obligated to construe pro se pleadings broadly and liberally, interpreting them so as to raise the strongest arguments they suggest.  *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000).

However, while the Court construes pro se pleadings liberally, this does not relieve pro se plaintiffs of the requirement that they plead enough facts to "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  Nor does it relieve them of the obligation to otherwise comply with the pleading standards set forth by the Federal Rules of Civil Procedure.  *See Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007); *see also Locicero v. O'Connell*, 419 F. Supp. 2d 521, 525 (S.D.N.Y. 2006) (requiring that pro se litigants allege sufficient facts to indicate deprivation of a constitutional right).

## DISCUSSION

Plaintiff alleges Facebook's removal and blocking of his posts violated both his constitutional rights and various "New York State" claims.  AC ¶¶ 23-27, 28-33; Dkt. No. 33 ¶¶ 28-29.  The Court construes the Complaint as primarily alleging claims under the Free Speech Clause of the First Amendment and the Communications Decency Act, 47 U.S.C. § 230.  Plaintiff also alleges Defendants' motion to transfer constituted "racketeering activity" and violated several federal statutes.  AC ¶¶ 34-71.  The Court addresses these claims in turn.

**I.      Claims Related to Alleged Removal of Content**

      **A.      Claims Under the First Amendment**

           **1.      Claims Against Facebook**

"Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005)); *see also Hudgens v. N.L.R.B.*, 424 U.S. 507, 513 (1976) ("[T]he constitutional guarantee of free speech is a guarantee only against abridgment by government."); *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 419 (S.D.N.Y. 2013) ("It is axiomatic that the First Amendment protects the rights to speak, publish, and assemble against abridgement only by the government.").

The actions of a private corporation only constitute state action "(i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action or (iii) when the government acts jointly with the private entity." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019) (internal quotations and citations omitted). Notably, "merely hosting speech by others is not a traditional, exclusive public function and does not alone transform private entities into state actors subject to First Amendment constraints." *Id*. at 1930. Therefore, private companies which maintain public online forums may "exercise editorial discretion over the speech and speakers in [such] forum[s]." *Id*.

Though the Second Circuit has not addressed the question of whether a social media provider is a state actor for First Amendment purposes, other circuits that have confronted the issue have unanimously held platforms like Facebook are not state actors. For example, the D.C. Circuit recently held that Facebook, Google, Twitter, and Apple were not state actors; the court

6

then affirmed the dismissal of First Amendment claims against the companies.  *Freedom Watch, Inc. v. Google Inc.*, 816 F. App'x 497, 499 (D.C. Cir. 2020) (noting the mere provision of "an important forum for speech" did not transform online platforms into state actors).  In a similar case involving YouTube, the Ninth Circuit held that "the state action doctrine preclude[d] constitutional scrutiny of YouTube's content moderation pursuant to its Terms of Service and Community Guidelines."  *Prager Univ. v. Google LLC*, 951 F.3d 991, 999 (9th Cir. 2020).  Other courts throughout the country have also declined to treat Facebook as a state actor and have upheld the company's ability to remove content.  *See, e.g., Ebeid v. Facebook, Inc.*, 2019 WL 2059662 at *6 (N.D. Cal. May 9, 2019); *Zimmerman v. Facebook, Inc.*, 2020 WL 5877863 at *2 (N.D. Cal. Oct. 2, 2020).

Plaintiff's claims based on the First Amendment, as well as on the Fifth, Sixth, and Fourteenth Amendments, therefore fail at the threshold because Facebook is not a state actor.  Plaintiff contends that Facebook's status as a "state actor" is "immaterial" because Facebook is performing a function "traditionally" performed by the government.  Dkt. No. 33 ¶¶ 8-12.  The relevant function that Facebook provides is an online platform for speech.  Plaintiff also analogizes Facebook's provision of an online messaging service to the government's traditional provision of mail services through the United States Postal Service.  *Id*. ¶¶ 10-11.  However, "[i]t is 'not enough' that the relevant function is something that a government has 'exercised . . . in the past, or still does' or 'that the function serves the public good.'"  *Prager Univ.*, 951 F.3d at 998 (quoting *Halleck*, 139 S. Ct. at 1928-29).  The government must have performed the function in question exclusively as well.  *Halleck*, 139 S. Ct. at 1929.  Facilitating the exchange of communication or hosting a platform for discussion are not activities "that *only* governmental entities have traditionally performed."  *Prager Univ.*, 951 F.3d at 998 (quoting *Halleck*, 139 S.

Ct. at 1930). Thus, Plaintiff may not "avoid the state action question" by claiming that Facebook is serving a public function. *Id*. at 999.

Plaintiff's other arguments regarding Facebook's status as a "new town square," Dkt. No. 33 ¶ 12, have been similarly addressed and dismissed by other courts. *See e.g.*, *Zimmerman*, 2020 WL 5877863, at *2 (holding the operation of a "digital town square" did not make Facebook a state actor). The Supreme Court held in *Marsh v. State of Alabama*, 326 U.S. 501, 506 (1946) that citizens in a company-owned town were guaranteed constitutional protections against the deprivation of their First Amendment rights by the company, but courts have refused to extend *Marsh*'s holding to social media cases. *See, e.g., Prager Univ.*, 951 F.3d at 998 (noting *Marsh* was "unequivocally confined . . . to the unique and rare context of company town[s] and other situations where the private actor perform[s] the full spectrum of municipal powers") (internal citations and quotation marks omitted). Finally, Facebook's status as a publicly held company does not make the company a state actor for the purposes of constitutional violations. *See Freedom Watch*, 816 F. App'x at 499 (dismissing First Amendment claims against Google, Facebook, Twitter, and Apple, which are all publicly traded companies).[2]

### Claims Against Individual Defendants

Plaintiff has not pleaded sufficient facts about Zuckerberg or Sandberg's personal involvement which would "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Plaintiff claims that the Individual Defendants "permitted, tolerated, and [sic] were deliberately indifferent to a clear pattern of suppression of free speech, discrimination, and partisanship abuse." Compl. at 6. However, Plaintiff fails to allege any facts that connect Zuckerberg or Sandberg to Facebook's removal of his posts. In the absence of any

8

allegations connecting Zuckerberg or Sandberg to Plaintiff's claims, the Amended Complaint must be dismissed.

### B.      Claims Under the Communications Decency Act

#### Claims Against Facebook

The Court construes Plaintiff's unspecified "New York State" claims as primarily alleging violations of Section 230 of the Communications Decency Act ("CDA"). Under Section 230(c)(1) of the CDA, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The aim of Section 230(c)(1) is to "provide immunity for 'interactive computer service[s]' that make 'good faith' efforts to block and screen offensive content." *Fed. Trade Comm'n v. LeadClick Media*, *LLC*, 838 F.3d 158, 173 (2d Cir. 2016). "In light of Congress's objectives, the Circuits are in general agreement that the text of Section 230(c)(1) should be construed broadly in favor of immunity." *Force v. Facebook, Inc.*, 934 F.3d 53, 64 (2d Cir. 2019).

A defendant will not be liable for removing certain content if it is "(1) a provider or user of an interactive computer service, (2) the claim is based on information provided by another information content provider and (3) the claim would treat [the defendant] as the publisher or speaker of that information." *LeadClick Media*, 838 F.3d at 173 (quoting *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418 (1st Cir. 2007)).

Plaintiff's allegations fail to make out a claim against Facebook under Section 230(c)(1). First, Facebook's online platform has routinely been classified as an "interactive computer service." *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 156 n.10 (E.D.N.Y. 2017); *see also*, *id.* ("The Second Circuit has not considered whether social media platforms in particular are 'interactive computer services' within the meaning of the law; however, other courts have readily

9

concluded that such websites (and Facebook in particular) fall into this category."). Second, Plaintiff does not allege that Facebook or the Individual Defendants "provided" the information that led to the claim. Rather, Plaintiff's claims are based on Facebook's alleged removal of content he personally created or shared. Compl. ¶¶ 17-18; AC ¶¶ 24-25; *see LeadClick Media, LLC*, 838 F.3d 158, 174 (2d Cir. 2016) (emphasizing a defendant "will not be held responsible unless it assisted in the development of what made the content unlawful"). Third, Section 230(c)(1) "bars lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content." *Id.*; *see also Domen v. Vimeo, Inc.*, 433 F. Supp. 3d 592, 601 (S.D.N.Y. 2020) (upholding Vimeo's immunity under Section 230(c)(1) to filter or remove content which violated its content and community policies). Facebook is therefore immune under Section 230(c)(1) from claims related to its removal of objectionable content.

### 2. Claims Against Individual Defendants

Plaintiff also claims that Zuckerberg, in his individual capacity, cannot claim immunity under Section 230(c)(1) because he is "responsible for hiring the 'Fact Checking Service' that checks the veracity of reposts and then publishes the 'corrected' content." Dkt. No. 33 ¶¶ 26-27. Presumably, Plaintiff is asserting that Zuckerberg is in some way an "information content provider" and thus not immune from liability. Similarly, Plaintiff claims Sandberg is not immune under Section 230(c)(1) because she is "the 'direct manger' of the 'content' that is fact checked and then published with the correction." *Id.* ¶ 29. However, here again Plaintiff fails to plead facts which support a "plausible" connection between the Individual Defendants and Facebook's alleged removal of his content. *Twombly*, 550 U.S. at 570.

## II.   Claims Related to RICO Violations

Plaintiff's Amended Complaint alleges Defendants violated the following federal statutes, which may serve as predicate RICO offenses under 18 U.S.C. § 1961(1): 18 U.S.C. § 1341 (relating to mail fraud), 18 U.S.C. § 1511 (relating to the obstruction of state or local law enforcement), and 18 U.S.C. § 1951 (relating to interference with commerce, robbery, or extortion).  AC ¶¶ 34-43, 54-63, 64-67.  In his opposition to the motion to dismiss, Plaintiff also alleged violations of 18 U.S.C. § 1343 (relating to wire fraud) and 18 U.S.C. § 1503(a) (relating to obstruction of justice).  Dkt. No. 33 ¶¶ 37-47; 40.  Though not defined as "racketeering activity" under 18 U.S.C. § 1961(1), Plaintiff also alleges violations of 18 U.S.C. § 1029 (fraud and related activity in connection with access devices) and general violations of 18 U.S.C. § 1962(a). AC ¶¶ 50-53, 68-71.

"To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (quoting *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001)).  To demonstrate a violation of the RICO statute, a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  Predicate offenses which constitute "racketeering activity" are listed in 18 U.S.C. § 1961(1).  "A 'pattern of racketeering activity' is defined by the statute as 'at least two acts of racketeering activity' within a ten-year period." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting 18 U.S.C. § 1691(5)).

"Litigation activity alone cannot constitute a viable RICO predicate act."  *Id.* at 105.  The majority of Plaintiff's RICO claims stems from Defendants' efforts to enforce Facebook's forum selection clause.  *See e.g.*, AC ¶ 38 (alleging Defendants are "attempting to 'defraud' the court

11

by 'swindling' the court . . . into transferring this matter to a venue that is not proper"); *id.* ¶ 55 (claiming Defendants are "obfuscating justice" by organizing under the laws of one state and conducting business in other states); *id.* ¶ 65 (contending Defendants are engaged in a "duplicitous playing of the jurisdictional shell game"). Plaintiff's claims, which stem from the Defendants' motion to transfer the action pursuant to Facebook's Terms of Service, must fail because they arise purely out of a litigation action. *See Kim,* 884 F.3d at 105. Thus, the following claims, which the Court construes as based primarily on Facebook's motion to transfer the action, must fail: 18 U.S.C. § 1341 (relating to mail fraud), 18 U.S.C. § 1511 (relating to the obstruction of State or local law enforcement), 18 U.S.C. § 1951 (relating to interference with commerce, robbery, or extortion), 18 U.S.C. § 1343 (relating to wire fraud), 18 U.S.C. § 1503(a) (relating to obstruction of justice), and 18 U.S.C. § 1962(a).

Finally, Plaintiff's claims alleging violations of 18 U.S.C. § 1029 (fraud and related activity in connection with access devices) fail as a matter of law as Plaintiff did not allege any facts which suggest Facebook used "access devices" in an unauthorized manner. 18 U.S.C. § 1029(e)(1).

## CONCLUSION

Defendants' motion, in the alternative, to transfer the venue to the United States District Court for the Northern District of California under 28 U.S.C. § 1404(a) is DENIED as such a transfer would not be necessary or a beneficial use of judicial resources.

Defendants' motion to dismiss the Amended Complaint is GRANTED in accordance with this opinion and order.

The Clerk of Court is respectfully directed to close Dkt. No. 27 and to close the case.

SO ORDERED.

Dated: June 25, 2021
      New York, New York

                                    LEWIS J. LIMAN
                                United States District Judge